JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Preston Mathis ("Mathis") appeals his conviction for gross sexual imposition and importuning after a jury trial in the Cuyahoga County Court of Common Pleas. In addition, Mathis appeals his sentence and the trial court's classification of him as a sexual predator. We affirm in part and reverse and remand in part.
 {¶ 2} The following facts give rise to this appeal. In June 2002, the victim, aged 15, called the Cleveland Raven telephone chat line without her parents' permission. The victim began chatting with Mathis, who went by the name "Preston" and represented to her that he was 18 years old. Mathis was actually 44 years old. The two exchanged home phone numbers and had several telephone conversations throughout the first two weeks of June. The victim then invited Mathis, with the permission of her mother, to her mother's birthday party set for June 14 at her family's home. Mathis arrived along with Ray Broom ("Broom"), aged 22, and introduced Broom as "Preston Junior" and himself as "Preston Senior." Mathis and Broom tried to pass off to the victim and her family that Broom was the "Preston" with whom the victim had been speaking. In addition, they represented to the family that they were father and son. At one point, the victim's stepfather was told that Mathis was 27 years old and Broom was 17 years old. The victim's stepfather explained to Mathis that his daughter was only 15 years old and that he kept a close eye on his family and he tried to provide a normal life for them. Mathis indicated that his "son" would only continue a relationship with consent of the victim's stepfather. The victim's stepfather indicated that he would have to discuss it with his wife.
 {¶ 3} Both visitors were offered food and then watched a movie with the victim and her cousin in the living room. At some point, all four went outside on the porch to cool off from the heat. The victim's parents were busy outside grilling food at this time. On the porch, the victim learned that Mathis was actually the "Preston" that she had been talking with on the chat line. Mathis grabbed the victim and was touching her buttocks and was trying to unzip her pants. The victim's cousin saw Mathis pull the victim down onto the couch that was on the porch.
 {¶ 4} The four then returned to the living room where Mathis had unbuckled and unzipped his pants while sitting on the couch. Mathis proceeded to pull back his shirt, grab the victim's hand and put it on his "private part." When the victim's brother entered the room, he saw Mathis push his sister's hand away from him and put his shirt over his pants to hide the activity taking place. The victim's brother noticed that his sister had a strange look on her face; however, the victim's brother did not say anything to his sister at the time. When Mathis and Broom were leaving the residence, Mathis attempted to kiss the victim.
 {¶ 5} The victim's cousin noticed that Mathis paid a lot of attention to the victim while Broom paid little or no attention to her. The victim's cousin thought this was strange. The victim subsequently told her cousin what Mathis had done to her, but they did not tell anyone about the incident.
 {¶ 6} The next day, Mathis and Broom returned with a gift for the victim's mother. Mathis told the stepfather that he was not 27 years old, but was actually in his forties. Mathis also explained that Broom was not really his son; however, he viewed him as such. They again discussed Broom and the victim dating. Mathis claimed he was concerned about who his "son" was hanging around with and that is why he would accompany him places.
 {¶ 7} Mathis called the victim a few days later and wanted to see her, but she refused. Mathis continued to call, but the victim did not meet with him. In August 2002, Mathis called the victim and invited her to the movies and told her to wear baggy shorts so he could put his hand inside of them. He also told her to bring her cousin so he could take pictures of them.
 {¶ 8} The victim's brother listened in on this conversation between Mathis and his sister and heard Mathis tell the victim to wear baggy shorts. He also heard Mathis state that he wanted to put her across his knee to "tame" her, and that he was going to strangle her. The victim's brother told his mother about this conversation, and at that point the parents went to the police.
 {¶ 9} Mathis was indicted by the Cuyahoga County Grand Jury on two counts of gross sexual imposition and one count of importuning. Mathis denied touching the victim. He admitted he did go to her place of employment (to check her out) and saw her but never spoke to her. After a jury trial, Mathis was convicted of one count of gross sexual imposition and one count of importuning.
 {¶ 10} On July 16, 2003, a sexual predator hearing was held and the court found Mathis to be a sexual predator. The court sentenced Mathis to 18 months on the gross sexual imposition conviction and 12 months on the importuning conviction. The sentences were ordered to run consecutively to each other.
 {¶ 11} Mathis timely appeals and advances five assignments of error for our review. In the interest of clarity, we will address them out of order.
 {¶ 12} "I. The trial court erred in denying appellant's motion for acquittal when the state failed to present sufficient evidence that appellant committed these crimes."
 {¶ 13} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. Id. In essence, sufficiency is a test of adequacy.State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387.
 {¶ 14} The statutes under which Mathis was convicted provide:
 {¶ 15} "R.C. 2907.05, Gross Sexual Imposition: No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when * * * the offender purposely compels the other person, * * *, to submit by force or threat of force." "R.C. 2907.07, Importuning: No person shall solicit another by means of a telecommunications device, * * *, to engage in sexual activity with the offender, when the offender is eighteen years of age or older, * * * and the other person is thirteen years of age or older but less than sixteen years of age, the offender knows that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the other person."
 {¶ 16} Here, Mathis argues that there is insufficient evidence to link him to the offenses. He asserts that the victim did not report the incident immediately, no one else came forward, and no one can pinpoint the date as to the charge of importuning. Mathis claims that the testimony was questionable and scant. We disagree.
 {¶ 17} Mathis's effort to mask a manifest weight claim as one of insufficient evidence is unremarkable. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Thompkins, supra at 386. The fact that the victim waited to tell her parents does not negate the fact that there were other witnesses to the events. The victim's brother witnessed the incident in the living room and overheard the threats and the solicitation on the telephone. In addition, her cousin witnessed Mathis pulling the victim onto the couch on the porch. Further, there was ample evidence of deception in the record that documented the true intentions of Mathis that support the legal sufficiency of both charges. We find that there was sufficient evidence as to each and every element of the crimes charged to warrant submission to the jury.
 {¶ 18} Further, the state does not need to prove the exact date of the offense, only that it occurred "on or about" a certain date or within a certain time period. It has long been held that "[i]n a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged." Tesca v. State (1923),108 Ohio St. 287, paragraph one of the syllabus; see, also, State v.Sellards (1985), 17 Ohio St.3d 169.
 {¶ 19} After viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Mathis was guilty of gross sexual imposition and importuning.
 {¶ 20} Mathis's first assignment of error is overruled.
 {¶ 21} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 22} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "`[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins, 78 Ohio St.3d at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 23} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court adopted the following guidelines set forth in State v. Mattison (1985),23 Ohio App.3d 10:
"(1) The reviewing court is not required to accept as true theincredible;
 (2) whether the evidence is uncontradicted;
 (3) whether a witness was impeached;
 (4) what was not proved;
 (5) the certainty of the evidence;
 (6) the reliability of the evidence;
 (7) whether a witness' testimony is self-serving;
 (8) whether the evidence is vague, uncertain, conflicting orfragmentary."
 {¶ 24} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. Furthermore, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, 20 Ohio App.3d at 175.
 {¶ 25} Here, Mathis argues that the victim is not credible because she waited to report the crime, she lied to her parents, and there was no reliable corroborative evidence. Again, we disagree.
 {¶ 26} The victim's testimony was corroborated by her brother and her cousin. There was no evidence that her brother or her cousin had any contact with Mathis prior to her mother's birthday party, nor was there any evidence that these individuals had a reason to fabricate allegations against Mathis.
 {¶ 27} The weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 231. It is evident that the jury chose to believe the victim and her brother and cousin regardless of her failure to report the crime immediately. While this court may consider the credibility of witnesses in reviewing the record, we accord due deference to the jurors' judgments since the jury had the opportunity to view the witnesses' testimony and judge their credibility.
 {¶ 28} In conducting this analysis, it is important to note that Mathis continuously lied about important details when he went to the victim's home. He lied about his age. He lied about Broom being his "son," and he lied about Broom's age. In addition, he lied about who had been speaking with the victim and who had the actual sexual interest in her. Furthermore, Mathis admitted he went and "checked out" the victim at her place of employment prior to seeing her at the party. Also, Mathis continued to contact the victim after learning that she was a teenager. All of his actions and testimony lend credibility to the victim's allegations and the testimony of the corroborating witnesses.
 {¶ 29} In light of this analysis, we cannot say that the jury clearly lost its way and created a miscarriage of justice and that the conviction is against the manifest weight of the evidence.
 {¶ 30} Mathis's second assignment of error is overruled.
 {¶ 31} "V. The trial court erred when it classified appellant as a sexual predator."
 {¶ 32} A trial court's sexual predator determination will not be reversed by an appellate court unless the trial court's decision is not supported by the manifest weight of the evidence.State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291; State v.Ellison, Cuyahoga App. No. 78256, 2002-Ohio-4024; State v.Chacon (May 2, 2002), Cuyahoga App. No. 79950; State v.Tillery, Cuyahoga App. No. 79166, 2002-Ohio-1587. An appellate court is required to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the determination must be reversed. State v. Davis (Dec. 12, 2003), Lake App. No. 2002-L-127. This deferential standard of review applies, even though the state must prove that the offender is a sexual predator by clear and convincing evidence. See Ellison, supra;Chacon, supra; Tillery, supra.
 {¶ 33} A sexual predator is defined by R.C. 2950.01(E) as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." The trial court must determine, by clear and convincing evidence, that the offender has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses before adjudicating him a sexual predator. R.C. 2950.09(B)(4). Clear and convincing evidence is that evidence which establishes in the mind of the trier of fact a firm belief or conviction as to the facts sought to be proved.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 34} In making this determination, the trial court must consider all relevant factors, including, but not limited to, the following: (a) the offender's age; (b) the offender's prior criminal record; (c) the age of the victim of the sexually oriented offense; (d) whether the sexually oriented offense involved multiple victims; (e) whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; (f) if the offender previously had been convicted of or pleaded guilty to a criminal offense, if the offender completed the sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sex offenders; (g) any mental illness or mental disability of the offender; (h) the nature of the offender's sexual conduct, contact, or interaction in a sexual context with the victim and whether the conduct was part of a demonstrated pattern of abuse; (i) whether the offender, during the commission of the offense, displayed cruelty or threatened cruelty; and (j) any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(3)(a) through (j).[1]
 {¶ 35} R.C. 2950(B)(3) does not require that the trial court list or satisfy each of these factors in order to make a sexual predator determination. State v. Cook, 83 Ohio St.3d 404, 426,1998-Ohio-291. It simply requires that the trial court consider all factors which are relevant to its determination. Id. Although the court need not "tally up" or list all the factors in a specific fashion, some indication that the trial court considered such factors must be on the record in order for a meaningful review by the appellate court. State v. Cole, Cuyahoga App. No. 82338, 2003-Ohio-7061.
 {¶ 36} Mathis argues that the trial court failed to consider all relevant factors as set out by the statute. He further argues that the state put forth no reliable or credible evidence that Mathis would reoffend. We disagree.
 {¶ 37} The state submitted to the court Mathis's criminal record which included convictions for aggravated menacing, aggravated burglary, aggravated robbery with specifications, having weapons under disability, and unlawful possession of a dangerous ordnance. The victim's statement as well as a statement by Mathis were both introduced. In addition, the sexual predator evaluation done by the court psychiatric clinic was submitted to the court. This included the Static-99 report that placed Mathis in the medium- to high-risk category, and the Abel Assessment report which stated that he may have difficulty responding truthfully to others and that he had a significant sexual interest in adolescent females.
 {¶ 38} Mathis called Dr. Aronoff to testify about and explain his reported findings.
 {¶ 39} The trial court found by clear and convincing evidence that Mathis had committed a sexually oriented offense and was likely to engage in the future in one or more sexually oriented offenses. It based its decision on these factors: (1) the Static-99 which rated Mathis at a four, or a medium to high risk, and placed the percent at 26 percent chance of reoffending in the next five years; (2) the Abel Assessment which stated that Mathis had difficulty telling the truth and likes situations in which he has control over others; (3) Mathis's prior record; (4) the current offense with the 15-year-old girl; (5) the nature of his contact with the victim (i.e., the chat line, and deception); (6) the fact that Mathis has engaged in viewing pornographic movies, sadomasochistic activity, and phone sex with previous partners; and (7) the victim was not related to him.
 {¶ 40} While the court is not required to list or satisfy each of the factors in order to make a sexual predator finding, these findings indicate many of the statutory factors are present and satisfied. The statute's non-exhaustive list of relevant factors is a guideline for inferring likelihood of reoffending.State v. Morrow, Cuyahoga App. No. 82743, 2004-Ohio-498.
 {¶ 41} Upon a thorough review of the record in this case, we find the trial court's decision to classify Mathis as a sexual predator is sufficiently supported by the record.
 {¶ 42} Mathis's fifth assignment of error is overruled.
 {¶ 43} "IV. The trial court erred when it sentenced appellant to maximum sentence without making the appropriate findings."
 {¶ 44} In order for a trial court to impose the maximum sentence, it must make the required findings set forth in R.C.2929.14(C), which provides in relevant part: "* * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst form of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes. * * *" In addition, R.C. 2929.19(B) requires the trial court to "make a finding that gives its reasons for selecting the sentence imposed" and if that sentence is the maximum term allowed for that offense, the judge must set forth the "reasons for imposing the maximum prison term." Failure to enumerate the findings behind the sentence constitutes reversible error. State v.Edmonson, 86 Ohio St.3d 324, 329.
 {¶ 45} In this case the court found that Mathis committed the worst form of the offense and that he posed a great likelihood of reoffending. The judge found that Mathis "scammed" the victim and her parents with lies about his age, his purported "son," and his intentions. The court indicated that Mathis stalked the victim by going to her place of employment to see what she looked like without actually talking to her. Furthermore, the court outlined that Mathis was still young enough to pose a threat to society referencing that he was in the 26th percentile to reoffend in the next five years based on the Static-99 report. Consequently, the court determined that the maximum sentence was necessary to protect the public.
 {¶ 46} Our review of the transcript reflects that the trial court complied with the statutory requirements for imposing the maximum sentence. We further note that the court was not required to consider the minimum sentence because Mathis was not a first time offender.
 {¶ 47} Mathis's fourth assignment of error is overruled.
 {¶ 48} "III. The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14(E)(4)."
 {¶ 49} R.C. 2929.14(E)(4) provides that a trial court may impose consecutive sentences only when it concludes that the sentence is "(1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction, or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Stadmire, Cuyahoga App. No. 81188, 2003-Ohio-873.
 {¶ 50} In addition, R.C. 2929.19(B)(2) provides that "a court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 51} Thus, a trial court is required to make at least three findings under R.C. 2929.14(E)(4) prior to sentencing an offender to consecutive sentences and must give its reasons for imposing consecutive sentences pursuant to R.C. 2929.19(B)(2)(c).Stadmire, supra; see, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165. A trial court's failure to sufficiently state its reasons on the record constitutes reversible error. Id.
 {¶ 52} In this case, the trial court set forth the first two of the three required findings on the record; however, the court failed to make the third finding and therefore committed reversible error. The court stated: "The maximum sentences are necessary to protect the public from future crimes." "[A]nd I don't believe consecutive sentences in this case will be disproportionate to the danger that you raise to the public, including the fact that you've scored in the 26% of men who will re-offend within the short 5 years." However lacking from the sentencing hearing is any one of the additional findings delineated in R.C. 2929.14(E)(4)(a)-(c).
 {¶ 53} The state argues that it is clear from the record that the court found that subsection (b) applies; we disagree. At no point in the sentencing hearing did the court talk about the harm caused to the victim. Finally, the court never discussed Mathis's prior convictions nor his prior prison terms during the sentencing hearing, which would have made subsection (c) applicable.
 {¶ 54} Further, we cannot allow the trial court's comments from the sexual predator hearing to be grafted onto the sentencing proceeding to satisfy the sentencing requirements. This court stated in State v. Craddock, Cuyahoga App. No. 82870, 2004-Ohio-627: "There is a clear distinction between the purpose of sentencing and the purpose of a sexual predator hearing. Unless the court clearly integrates or incorporates the hearings together and expressly indicates the findings or reasons stated in one are to be applied in the other, statements in a sexual predator hearing cannot be used to satisfy the statutory required findings and reasons for maximum or consecutive sentences." While the court clearly addresses Mathis's prior convictions and prison sentences in the sexual predator hearing, it never made the required finding during the sentencing hearing and did not expressly incorporate its findings from the sexual predator hearing to the sentencing hearing. Therefore, we find that the trial court did not make the requisite findings to impose consecutive sentences.
 {¶ 55} Mathis's third assignment of error is sustained.
 {¶ 56} Judgment affirmed in part and reversed in part. The sentence is vacated and case remanded for a new sentencing hearing.
 {¶ 57} This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
 {¶ 58} It is ordered that appellant and appellee share the costs herein taxed.
 {¶ 59} The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
 {¶ 60} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., concurs.
[1] R.C. 2950 was amended effective July 31, 2003. R.C.2950.09(B)(2) is now R.C. 2950.09(B)(3).